IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CR-161 |
| | ) | |
| MAIMOUNE WRIGHT, | ) | (VARLAN/SHIRLEY) |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. Pending before this Court are the Defendant's three motions to dismiss the Second Superseding Indictment: Defendant Wright's Amended Motion to Dismiss for Duplicity and to Strike Surplussage [sic.] in Second Superseding Indictment [Doc. 69],[1] Defendant Wright's Motion to Dismiss for Preindictment Delay and Failure to Preserve Evidence in Violation of Defendant's Due Process Rights [Doc. 71], Defendant Wright's Motion to Dismiss for Selective Prosecution [Doc. 73], all filed on August 1, 2011. This case came before the Court on September 26, 2011, for an evidentiary and motion hearing on the Defendant's pending motions. Assistant United States Attorney Alexandra Hui appeared on behalf of the Government. Attorney Michael H.

---

[1]The Defendant filed another Motion to Dismiss for Duplicity and to Strike Surplussage [sic.] in First Superseding Indictment [**Doc. 62**] on that same day. Because this motion is identical to Document 69, in all respects except that it refers to the First Superseding Indictment, rather than the Second Superseding Indictment, it is **DENIED as moot**.

1

Meares represented Defendant Wright, who was also present.[2]  The parties presented testimony and argument on the pending motions, which the Court took under advisement at the conclusion of the hearing.

## I.  BACKGROUND

Defendant Wright is charged in a Third Superseding Indictment [Doc. 103] with a single count (Count 1) of conspiring to dispense controlled substances outside of the usual course of professional practice and without a legitimate medical purpose from August 2008 to December 14, 2010.  The Indictment alleges that Defendant Wright worked at Maryville Pain Management clinic from December 1, 2008, to September 28, 2009. [Doc. 103, ¶12]  It states that Defendant Wright signed blank prescriptions; left them with Defendant Tamral Guzman, who is not authorized to prescribe medication; and was often not present for the examinations of patients.  [Doc. 103, ¶12] The Indictment also alleges that Defendant Wright left additional presigned blank prescriptions with Defendant Guzman when she resigned from the clinic on September 28, 2009.  [Doc. 103, ¶13]

## II.  POSITIONS OF THE PARTIES

The Defendant calls for the dismissal of the Indictment,[3] arguing that (1) the

---

[2]Attorneys Michael B. Menefee and Christopher Scott Irwin appeared on behalf of Defendants Tamral Guzman and Brian Downey respectively.  Defendants Guzman and Downey were not present at the hearing and have not joined in these motions.

[3]The Defendant's motion calls for the dismissal of the Second Superseding Indictment [Doc. 56].  On November 1, 2011, the Government filed a Third Superseding Indictment [Doc. 103].  Count One, which is the only count charging Defendant Wright in either the Second or Third Superseding Indictment, extends the date for the end of the conspiracy to dispense controlled substances by one week, from December 7, 2010, to December 14, 2010.  The Third

2

Indictment is duplicitious, (2) the Government's delay in bringing the Indictment resulted in the spoilation of evidence, and (3) the Government is selectively prosecuting her based upon her race. The Government responds in opposition to each of these contentions.

With regard to her duplicity argument, the Defendant contends [Doc. 69] that although the Indictment purports to charge a single conspiracy to dispense controlled substances outside of the usual course of medical practice and without a legitimate medical purpose, it actually charges multiple conspiracies, all of which were connected to Codefendant Tameral Guzman. She also maintains that the Indictment contains surplus language referring to Schedule I and Schedule III drugs, when these substances are not included in the charges. She asserts that this surplus language should be stricken to avoid prejudice to her and confusion of the jury.

The Government responds [Doc. 85] that the Indictment properly charges a single conspiracy in which all the coconspirators operated out of Maryville Pain Management clinic for the common purpose of profiting from the sale of unlawful prescriptions. It also argues that the descriptions of Schedule I and III drugs in the Indictment provide context, are relevant to understanding the types of drugs charged in this case, and are not prejudicial.

The Defendant also argues [Doc. 71] that the Government's delay in bringing the charge against her in this case violated her right to due process of law. She contends that the Government knew of her alleged involvement in the case in early November 2009, yet did not bring the instant conspiracy charge until April 5, 2011. She argues that she was prejudiced by this delay because necessary evidence, in the form of medical records from Maryville Pain Management, is no

Superseding Indictment also contains some linguistic changes in the overt acts and forfeiture allegations. To the extent that these changes are relevant to the instant motions, they will be discussed in the report.

3

longer accessible to her.

The Government responds [Doc. 84] that any delay in prosecuting the Defendant is the result of the fact that it was still investigating the case and not to create a tactical advantage. Also, it asserts that it had no legal basis to seize any medical records from Maryville Pain Management, other than the 59 patient files, which it seized pursuant to a search warrant. It questions whether the medical files are actually unavailable to the Defendant but states that, in any event, the Defendant's lack of access to the medical records is not due to prosecutorial delay.

Finally, the Defendant argues [Doc. 73] that the Court should dismiss the Indictment because she was selectively prosecuted on the basis of her race. She argues that of the seven medical professionals working at Maryville Pain Management during the time period of the alleged conspiracy, she was the only one prosecuted due to the racial bias of DEA and state investigators. She contends that her selective prosecution will have a discriminatory effect on other African nurse practitioners.

The Government responds [Doc. 83] that the Defendant cannot show either discriminatory intent or discriminatory effect in this case. First, it argues that the Defendant has made no claims of racial bias against federal prosecutors, who were the only ones with the authority to bring charges against the Defendant. Second, it contends that the Defendant has failed to show any racial bias on the part of investigators. Third, it maintains that the other medical practitioners at Maryville Pain Management were not similarly situated to the Defendant and, thus, cannot provide a basis for showing discriminatory effect.

4

# III. ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. Amend. V. "The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling). A defendant may challenge a defect in the indictment before trial. Fed. R. Crim. P. 12(b)(2). Defendant Wright calls for the dismissal of the charge against her because she contends (1) Count One of the Indictment is duplicitous in violation of her Fifth Amendment rights, (2) prosecutorial delay in bringing charges against her resulted in the spoilation of evidence, and (3) she was selectively prosecuted because of her race. The Court will examine each of these issues in turn.

## A. Duplicity and Surplusage

The Defendant argues [Doc. 69] that the Indictment is duplicitous because it alleges multiple conspiracies in a single count. Count One charges Defendant Wright, Defendant Tamral Guzman, and unnamed "others" with conspiring to dispense controlled substances "outside of the usual course of professional practice and without a legitimate medical purpose[.]" [Doc. 103, ¶8] This conspiracy is alleged to have begun in August 2008 and to have extended through December 14, 2010. The indictment alleges that Defendant Wright "was employed by Maryville Pain

5

Management from approximately December 1, 2008, through September 28, 2009." [Doc. 103, ¶12]. It also alleges that Maryville Pain Management employed no medical practitioner from September 28, 2009, to October 19, 2009. [Doc. 103, ¶14] The Defendant argues that because the conspiracy begins before her employment and extends beyond her resignation, the Indictment actually alleges other, separate conspiracies between Defendant Guzman, who is not a practitioner, and "others" in possession of a DEA number and authorized to prescribe controlled substances. The Defendant contends that "[t]o allow the Government to prove an alleged continuing conspiracy with Guzman, either before or after Wright's credentials were used, or available for use, will create an impermissible variance in the proof where one conspiracy has been alleged but multiple conspiracies may be proved." [Doc. 69, p. 3]

Alternatively, the Defendant also argues that the language in paragraphs 2.a. and 2.c. of the Indictment must be stricken as surplusage. Paragraph 2.a. describes Schedule I controlled substances as drugs "with a high potential for abuse, no accepted medical use in the United States, and no accepted safety for use under medical supervision." [Doc. 103, ¶2.a.] Paragraph 2.c. similarly describes Schedule III drugs as those with "a currently accepted medical use, but a potential for abuse, albeit a lesser potential than the drugs in Schedules I and II. This abuse may lead to moderate or low physical dependence, or a high psychological dependence." [Doc. 103, ¶2.c.] The Defendant asserts that because the Indictment does not allege that any Schedule I or III drugs were dispensed from Maryville Pain Management, the language in paragraphs 2.a. and 2.c. is surplusage and should be stricken. She argues that the repeated unnecessary references to the drugs' "potential for abuse" in paragraphs 2.a. and 2.c. could be prejudicial to her.

The Government responds [Doc. 85] that Count One alleges a single conspiracy in

6

which all co-conspirators "used the store front of Maryville Pain Management, LLC for the common goal of generating large cash revenue through the unlawful sale of prescriptions." [Doc. 85, p.3] It contends that Defendant Wright's entry into the conspiracy after the alleged start date and her withdrawal in September 2008, after her commission of certain overt acts, does not transform the conspiracy into multiple conspiracies. Moreover, the Government argues that whether a single conspiracy or multiple conspiracies exist is a matter of fact for the jury to determine. Finally, the Government contends that the language in paragraphs 2.a. and 2.c. provides context to the surrounding paragraphs, which describe the drugs in Schedules II and IV. Accordingly, it maintains that paragraphs 2.a. and 2.c. are relevant and not prejudicial.

*(1) Duplicity*

"An indictment is duplicitous if it sets forth separate and distinct crimes in one count." United States v. Davis, 306 F.3d 398, 415 (6th Cir. 2002). The primary problem with duplicitous counts is that the jury may not arrive at a unanimous verdict on a specific count. United States v. Washington, 127 F.3d 510, 513 (6th 1997). This effect of duplicitous indictments can potentially prejudice the defendant at sentencing, on appellate review, and in protecting against a future double jeopardy violation. Id.

The Defendant contends that the indictment is duplicitous because it actually charges multiple conspiracies between Defendant Guzman and different health care providers with the authority to write prescriptions, rather than a single conspiracy as alleged. "If an indictment alleges one conspiracy, but the evidence can reasonably be construed only as supporting a finding of multiple conspiracies, the resulting variance between the indictment and the proof is reversible error if the appellant can show that he was prejudiced thereby." United States v. Warner, 690 F.2d 545,

7

549 (6th Cir. 1982) (citing <u>Kotteakos v. United States</u>, 328 U.S. 750 (1946)).   The prejudice stemming from an indictment that charges a single conspiracy when the government's proof shows multiple conspiracies is threefold: (1) the defendant is not able to present his or her defense but, instead, may be surprised by the evidence at trial; (2) the defendant's conviction is based upon the substantive offenses of another; and (3) "spillover" evidence relating to alleged coconspirators causes the jury to perceive greater culpability in the defendant and greater harm to the public.  <u>United States v. Swafford</u>, 512 F.3d 833, 842-43 (6th Cir. 2008).

In order to discern whether an indictment charges a single or multiple conspiracies, the Court must look to the allegations of the criminal agreement, which is "the essence of the crime of conspiracy[.]"  <u>Warner</u>, 690 F.2d at 549.

> "[I]n order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal."  <u>United States v. Martino</u>, 664 F.2d 860, 876 (2d Cir. 1981) (citation omitted). However, the government is not required to prove an actual agreement among the various conspirators in order to establish a single conspiracy.  In one form of conspiracy, often described as a "chain" conspiracy, the agreement can be inferred from the interdependent nature of the criminal enterprise.  <u>United States v. Sutherland</u>, [656 F.2d 1181,] 1190-91[ (5th Cir. 1981)].  Conspiracies to distribute narcotics, which normally involve numerous sales and resales of drugs until they reach the ultimate consumers, are often "chain" conspiracies.  Because the success of participants on each level of distribution is dependent upon the existence of other levels of distribution, each member of the conspiracy must realize that he is participating in a joint enterprise, even if he does not know the identities of many of the participants.  Accordingly, a single conspiracy does not become multiple conspiracies simply because each member of the conspiracy did not know every other member, or because each member did not know of or become involved in all of the activities in furtherance of the conspiracy.

<u>Id.</u> (some citations omitted); <u>see also</u> <u>United States v. Segines</u>, 17 F.3d 847, 856 (6th Cir. 1994)

8

(observing that passage of time or a change in membership or location do not transform a single conspiracy into a multiple conspiracy); United States v. Kelley, 849 F.2d 999, 1003 (6th Cir. 1988) (holding that "[a]lthough the enterprise engaged in three separate transactions, and the cast of characters changed over the course of the enterprise, this does not mean that there was not one conspiracy linking all three deals"). "'Drug distribution conspiracies are often "chain" conspiracies such that agreement can be inferred from the interdependence of the enterprise.'" United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir. 1988) (quoting United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir. 1986)). The Government argues that the instant conspiracy is a chain conspiracy, with all the coconspirators operating out of the storefront of the Maryville Pain Management clinic.

The Defendant argues that the instant indictment actually charges a "rimless wheel conspiracy," that is multiple separate conspiracies all connected to Defendant Guzman as the hub but with no common rim of agreement between all other coconspirators. "'A rimless wheel conspiracy is one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction.'" Swafford, 512 F.3d at 842. In Swafford, the court concluded that the proof at trial–that the defendant sold iodine to numerous customers who planned to use it to manufacture methamphetamine–supported a finding of multiple conspiracies varying from the single conspiracy charged, because none of the customers were acting in furtherance of a common goal or were interdependent. Id. In this case, the Defendant argues that "[i]f codefendant Guzman entered into a conspiracy with another practitioner before, after or even at the same time as Wright with the goal of misusing their credentials to distribute narcotics for no legitimate medical purpose, such other practitioner's conduct cannot be attributed to Wright." [Doc. 70, p.1] At the

9

motion hearing, the Government responded that all the coconspirators in this case were connected by a common agreement, not just by a common defendant.

Duplicity in an indictment occurs when the indictment on its face charges two or more crimes in a single count. <u>Davis</u>, 306 F.3d at 415. Count One of the instant Third Superseding Indictment charges, in pertinent part, as follows:

> Beginning in or about August 2008, and continuing through on or about December 14, 2010, within the Eastern District of Tennessee, the defendants, **TAMRAL GUZMAN and MAIMOUNE WRIGHT**, did combine, conspire, confederate, and agree with each other and others to commit violations of Title 21, United States Code, Section 841(a)(1), that is, knowingly, intentionally, and without authority to dispense, distribute, possess with intent to dispense, and possess with intent to distribute a quantity of a mixture and substance containing oxycodone, a Schedule II controlled substance; a quantity of a mixture and substance containing hydrocodone, a Schedule II controlled substance; a quantity of a mixture and substance containing alprazolam, a Schedule IV controlled substance; a quantity of a mixture and substance containing diazepam, a Schedule IV controlled substance; and a quantity of a mixture and substance containing zolpidem, a Schedule IV controlled substance, outside of the usual course of professional practice and without a legitimate medical purpose, all in violation of Title 21, United States Code, Section 846.

The Court finds that Count One of the Indictment charges a single conspiracy on its face.

The Court finds that the Defendant's argument relates to the factual allegations in the Manner and Means portion of Count One. Defendant essentially argues that the facts alleged in Count One do not show a criminal agreement between Defendant Wright and anyone other than Defendant Guzman. "'[W]hether single or multiple conspiracies have been shown is usually a question of fact to be resolved by the jury[.]'" <u>Schultz</u>, 855 F.2d at 1222 (quoting <u>Kelley</u>, 849 F.2d at 1002) (other citations omitted). All of the cases cited by the parties, as well as others reviewed

by the Court, raise the issue of single vs multiple conspiracies by asking whether a fatal variance occurred between the allegations in the indictment and the proof at trial or by evaluating the sufficiency of the evidence. See Kotteakos v. United States, 328 U.S. 750, 776 (1946) (expressing "no opinion on whether indictments with this defect[, that of charging a single conspiracy when multiple conspiracies are proven,] should always be dismissed"); United States v. Goff, 400 F. App'x 1, 12 (6th Cir. 2010); Segines, 17 F.3d at 856; Swafford, 512 F.3d at 841; Schultz, 855 F.2d at 1222; Kelley, 849 F.2d at 1002; Warner, 690 F.2d at 548; see also United States v. Berger, 224 F.3d 107, 114-16 (2nd Cir. 2000); United States v. Durades, 607 F.2d 818, 819 (9th Cir. 1979). While it is arguable that the Third Superseding Indictment does not allege much to reveal the interdependence of the coconspirators or the conspiratorial agreement with respect to persons other than Wright and Guzman, this does not mean that the Government will not be able to prove those matters at trial. Accordingly, the Court finds that Count One of the Indictment is not duplicitous because it only charges a single conspiracy. Moreover, at this juncture, the Court can only speculate whether a fatal variance in the proof will occur at trial. Thus, the Court finds that the issue of a fatal variance is not one that can be decided before the trial of the matter. Fed. R. Crim. P. 12(b)(2) (providing that parties "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue").

*(2) Surplus Language*

The Defendant argues that inclusion of information about Schedule I and Schedule III drugs in paragraphs 2.a. and 2.c. of the Indictment is surplusage and prejudices her because no Schedule I or III drugs are alleged to have been improperly distributed in this case. Rule 7 of the

Federal Rules of Criminal Procedure provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). Upon motion of the defendant, "the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). The Advisory Committee notes to the rule explain that "[t]his rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Whether to strike surplus language from an indictment is a matter within the sound discretion of the district court. United States v. Kemper, 503 F.2d 327, 329 (6th Cir. 1974). Rule 7(d) "is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." Id. The Sixth Circuit has held that "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." United States v. Moss, 9 F.3d 543, 550 (6th Cir. 1993); United States v. Thomas, 875 F.2d 559, 562 n.2 (6th Cir. 1989).

In the instant case, the Government argues that the information in 2.a. and 2.c. is relevant because it gives context to the allegations in paragraphs 2.b. and 2.d. regarding the use and addictiveness of those classes of controlled substances at issue in this case. The Court agrees. The paragraphs in question are relevant because they inform the layperson about the range of uses and addictiveness of controlled substances in order to allow one to understand the type of drugs alleged in this case. Moreover, the Court does not find the repetition of the word "potential for abuse" to be prejudicial to the Defendant. If anything, the explanation of the potential for abuse of four schedules of controlled substances reveals that the drugs alleged in this case were not of the most serious category, Schedule I. Accordingly, the Court finds that paragraphs 2.a. and 2.c. are not

surplusage.

## B. Prosecutorial Delay and Spoilation of Evidence

The Defendant also moves [Doc. 71] the Court to dismiss the Indictment because of the Government's pre-indictment delay and failure to preserve evidence. The Defendant alleges that despite her revealing to DEA Investigator David Graham on September 25, 2009, that she suspected the clinic was directly dispensing narcotics, and despite her alleged admission regarding pre-signed prescriptions on November 5, 2009, she was not charged in this case until April 5, 2011. She argues that this delay in prosecuting her violated her right to due process because medical files at Maryville Pain Management are no longer available to her. She contends that these files are necessary for her to prove that controlled substances prescribed by her during her tenure at Maryville Pain Management were based upon a "legitimate medical purpose" and were prescribed in the "usual course of professional practice." The Defendant argues that the Government acted in bad faith in failing to preserve the medical records at Maryville Pain Management, because it did not attempt to seize these records until December 13, 2010, and only seized 59 patient files at that time. She asserts that she is prejudiced by the Government's failure to preserve all of the medical records at Maryville Pain Management because she can no longer show that the drugs she prescribed were issued due to a legitimate medical purpose and in the usual course of her practice.[4]

---

[4]In support of this contention, the Defendant offers the affidavit [Doc. 71-1] of Dr. Tucker Montgomery, a medical doctor and attorney, who opines that it is essential to review an individual patient's chart in order to determine whether that person's prescription was "legitimate." Dr. Montgomery also avers that it is prejudicial for the Defendant to have access to only 59 files from her ten months of employment with which to show her "usual course of professional practice."

The Government responds [Doc. 72] that the time period between the Defendant's admission on November 5, 2009, and the First Superseding Indictment [Doc. 41] charging the Defendant was due to the continued investigation of the case, rather than to gain any tactical advantage. The Government also argues that it had no basis to seize all of the medical records at Maryville Pain Management and, therefore, it is not responsible for the loss of those records to the Defendant.

Statutes of limitations provide the main protection against prosecutorial delay in charging a defendant. United States v. Lovasco, 431 U.S. 783, 789 (1977). "Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." Toussie v. United States, 397 U.S. 112, 114-15 (1970). In the present case, the indictment was brought within the applicable five-year statute of limitations. See 18 U.S.C. § 3282(a) (imposing a five-year statute of limitations for all non-capital cases).

Nevertheless, delay in prosecuting a defendant can implicate due process even if the indictment is brought within the statute of limitations. United States v. Marion, 404 U.S. 307, 325 (1971) (reversing dismissal for three-year time period between crimes and indictment). To assess whether a constitutional violation has occurred, courts are to determine whether the "'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency,'" are violated. Lovasco, 431 U.S. at 790 (quoting Mooney v. Holohan, 294 U.S. 103, 112 (1935), and Rochin v. California, 342 U.S. 165, 173 (1952)). "Dismissal for pre-indictment delay is warranted only when the defendant shows substantial

prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage." United States v. Brown, 667 F.2d 566, 568 (6th Cir. 1982), see also Marion, 404 U.S. at 324; United States v. Greene, 737 F.2d 572, 574 (6th 1984).

*(1) Substantial Prejudice*

The defendant bears the burden of showing substantial prejudice by definite proof, rather than speculation. United States v. Birney, 686 F.2d 102, 105-06 (2nd Cir. 1982); see also United States v. Rogers, 118 F.3d 466, 475 (6th Cir. 1997). In the present case, the Defendant seeks to show substantial prejudice from the delay by arguing that the medical files from Maryville Pain Management are no longer available to her. She contends that the Government knew that she needed access to all the medical files at the clinic to be able to show the legitimacy of her "usual course" of professional practice. The Defendant asserts that despite having this knowledge, the Government failed to seize and preserve all the medical files from Maryville Pain Management, when it seized drugs from the clinic on November 13, 2009. The Defendant points out that the Government also failed to seize all of the medical files when it executed a search warrant at Maryville Pain Management on December 14, 2010. The Defendant states that of the 59 patient files seized by the Government, five percent show that she refused to distribute controlled substances to patients, whom she believed did not have a legitimate medical need for the medication. The Defendant believes that other medical files left at Maryville Pain Management are also similarly exculpatory. Thus, she contends that the Government acted in bad faith and substantially prejudiced her defense by failing

to preserve all the medical records from the clinic.[5]

In support of her argument, the Defendant references the Sixth Circuit's three-part test for determining when the government's failure to preserve materially exculpatory evidence constitutes a due process violation:

> When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means.

Monzo v. Edwards, 281 F.3d 568, 580 (6th Cir. 2002) (quoting Arizona v. Youngblood, 488 U.S. 51, 57 (1988)). The Defendant argues that the Government acted in bad faith in failing to preserve the medical records at Maryville Pain Management and then preserving only a select few that supported its case, despite knowing that the Defendant was a target of its investigation. The Defendant also contends that access to all the medical records from the clinic are necessary for her to prove a legitimate medical purpose in dispensing prescriptions in the usual course of her professional practice. She maintains that she has no comparable evidence to replace the missing patient records.

The Government argues that this three-part test is inapplicable in this case because

---

[5]At the September 26 hearing, the Defendant also raised the issue of Investigator David Graham's destruction of a box of blank prescription pads printed with Defendant Wright's name. Investigator Graham testified that he seized this box on November 13, 2009, and disposed of the contents at Defendant Guzman's request, because he did not consider it to be evidence. Defendant Wright does not contend that the destruction of these prescription pads was the result of prosecutorial delay. The Court will address the issue of the destruction of this box of prescription pads in a separate Memorandum and Order in relation to Defendant Wright's Motion for Production of Favorable Evidence [Doc. 75].

16

the medical records were never in its possession, nor could it have lawfully obtained them. It states that Investigator Graham was at the clinic pursuant to Defendant Guzman's consent on November 13, 2009, when he seized drugs that were in plain view. The Government contends that it did not have probable cause to seek a search warrant for medical records at this time. The Government argues that as the investigation developed, it gained probable cause to seek a search warrant for eighty specific medical files. In order to satisfy the Fourth Amendment's particularity requirement with regard to the seizure of medical records, the government must identify by patient name, which records are sought. United States v. Lazar, 604 F.3d 230, 238 (6th Cir. 2009). Accordingly, the Government argues that it could not have seized all of the medical records at Maryville Pain Management. The Brady rule requiring the government to preserve and disclose exculpatory information only applies to that information within the government's control. Owens v. Guida, 549 F.3d 399, 415 (6th Cir. 2008).

In the present case, the Court finds that the remainder of the clinic's medical records, other than those seized pursuant to a search warrant in December 2010, were not in the Government's possession and that the Government did not act in bad faith in failing to seize the records. Moreover, the Defendant has possession of the 59 medical files seized from Maryville Pain Management, which are presumably the files that the Government intends to use as its proof at trial. Accordingly, the Defendant may use the contents of those files to show that the prescriptions issued to those patients were needed for a legitimate medical purpose.[6] The Defendant has failed to show

---

[6]This conforms to the affidavit of the Defendant's expert Dr. Tucker, who opines that "[t]he practice of medicine is very individualized. A prescription which would have a 'legitimate medical purpose' for one patient might not for another. Accordingly, it is essential to review an individual patient's chart when deciding whether that individual's prescription was 'legitimate.'"

that any prosecutorial delay caused her substantial prejudice.

*(2) Tactical Advantage*

The second prong that the Defendant must prove is that the Government intentionally caused the preindictment delay in order to gain a tactical advantage. See Marion, 404 U.S. at 324. The Defendant appears to be alleging that the Government intentionally delayed by suggesting that it had no valid reason to delay after her admission on November 5, 2009. The Court notes that even when a prosecutor believes probable cause exists to seek an indictment, the prosecutor is not compelled to file charges that day or at any time before he or she is satisfied that the suspect's guilt can be proven beyond a reasonable doubt. Lovasco, 431 U.S. at 791. To hold otherwise would have negative consequences for potential defendants because it would "increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried." Id., see also Greene, 737 F.2d at 574 (observing that requiring the government to prove and courts to determine that the government brought the prosecution as soon as it had sufficient evidence to gain a conviction would impose burdensome record-keeping requirements on prosecutors, as well as burdening courts reviewing the prosecutors' decisions).

The Government cites to the ongoing investigation into the Defendant's activities as the reason for the delay. Unlike a prosecution intentionally delayed for the Government's tactical advantage, the prosecution of a defendant "following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Lovasco, 431 U.S. at 796. The Court finds that the testimony at the September 26, 2011 suppression hearing substantiates the Government's claim that the investigation of the Defendant was ongoing from the

18

time of her admission on November 5, 2009, until the filing of the First Superseding Indictment on April 5, 2011. Investigator Graham testified that he initially believed that the Defendant was the victim of someone forging her name on prescriptions. Investigator Houser testified that even after the Defendant admitted to pre-signing blank prescriptions, the Defendant still believed that Defendant Guzman had improperly used those blank prescriptions. Accordingly, the investigators continued their investigation to learn the roles of the various parties.

Finally, the Court finds that the Defendant has presented no proof that the Government intentionally delayed the bringing of charges against the Defendant in order to gain a tactical advantage. Instead, the Government argues that any delays caused by its investigation of this case prejudice it, in terms of dimmed memories of witnesses, in prosecuting the case, rather than giving it an advantage. The Court concludes that there is no basis to support a finding that the Government intentionally delayed in order to gain a tactical advantage.

In summary, the Court finds that the Defendant has failed to show both that the delay was an intentional device by the Government for the purpose of gaining a tactical advantage and that the delay has caused her substantial prejudice. Accordingly, the Court finds that the one year and five-month lapse of time from the Defendant's admission of pre-signing blank prescriptions on November 5, 2009, to the indictment filed on April 5, 2011, does not violate fundamental concepts of justice or defy the standards of fair play and decency. See Lovasco, 431 U.S. at 790.

### C. Selective Prosecution

The Defendant argues [Doc. 73] that she was selectively prosecuted based upon her race. She contends that of the seven medical professionals working at Maryville Pain Management

19

during the time frame of the alleged conspiracy, only she has been charged. The Defendant argues that she was singled out for investigation by Investigator Betty Houser of the Tennessee Health Related Boards because she is African. She also contends that Investigator Houser and Agent Graham made racist remarks to her on November 5, 2009. The Defendant argues that she was selected for prosecution for the discriminatory purpose of limiting African nationals from nursing practice and that her selective prosecution will have a discriminatory effect on other African nurse practitioners.

The Government denies [Doc. 83] that the Defendant was selectively prosecuted and argues that the Defendant cannot demonstrate either discriminatory effect or discriminatory intent. With regard to discriminatory intent, it contends that Investigator Houser investigated the Defendant in response to complaints made about the Defendant, rather than due to racial animus. The Government denies any racist remarks were made to the Defendant on November 5, 2009. Finally, the Government points out that neither Investigator Houser nor Investigator Graham have any authority over the decision to pursue a federal prosecution of the Defendant. The Government also maintains that the Defendant cannot show a discriminatory effect from her prosecution. It asserts that the other practitioners who were employed at Maryville Pain Management were not similarly situated to the Defendant because no evidence exists that they pre-signed blank prescriptions.

"The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." United States v. Armstrong, 517 U.S. 456, 464 (1996) (quoting Wayte v. United States, 470 U.S. 598, 607 (1985)). Because prosecutors are statutorily designated as the President's delegates, their decisions are entitled to a "presumption of regularity" unless there exists clear evidence to the contrary. Id. On the other hand, prosecutorial decisions are subject to

constitutional restraints.  Id.  Hence, "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification,'" in violation of the equal protection component of due process.  Id. (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)).

In order to establish a selective prosecution claim, the defendant "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'"  Armstrong, 517 U.S. at 465 (quoting Wayte, 470 U.S. at 608) (citations omitted).  The Court of Appeals for the Sixth Circuit has established a two-part test for evaluating whether a defendant has been selectively prosecuted:

> "To prevail on a selective prosecution claim, a defendant must show that the federal prosecutorial policy had both a discriminatory effect and a discriminatory intent.  To establish discriminatory intent in a case alleging selective prosecution based on race, a claimant must show that the prosecutorial policy was motivated by racial animus; to establish discriminatory effect, the claimant must demonstrate that similarly situated individuals of a different race were not similarly prosecuted."

United States v. Jones, 399 F.3d 640, 645 (6th Cir. 2005) (quoting United States v. Jones, 159 F.3d 969, 976-77 (6th Cir. 1998) (citations omitted)).

In the instant case, the Court agrees with the Government that the Defendant has failed to make a prima facie case of either discriminatory intent (that the prosecution decided to prosecute the defendant based upon racial animus) or discriminatory effect (that similarly situated non-African individuals were not also prosecuted).  First, the record is devoid of any hint of racial animus on the part of prosecuting attorneys in this case.  The Defendant argues that the prosecuting attorneys deferred to the investigators in bringing the instant charge and that the investigators singled her out because of her race.  Initially, the Court observes that neither the DEA investigator nor the

state investigator had the authority to bring federal charges against the Defendant. Moreover, even assuming that the Court should look to the motivations of the investigators, the Court also finds, as discussed below, that no racial animus motivated the investigation by DEA Investigator David Graham or Investigator Betty Jean Houser of the Tennessee Department of Health.

The Defendant argues that Investigators Graham and Houser investigated her and not any of the other medical professionals at Maryville Pain Management clinic. At the suppression hearing on September 26, 2011, Investigator Graham testified that he asked to meet with the Defendant on October 29, 2009, after Nurse Practitioner Melvin Viney contacted him about Viney's concern that the Defendant's name had been forged on prescriptions issued from Maryville Pain Management. Investigator Houser testified that although complaints had been filed about Maryville Pain Management and the Defendant, she had yet to begin her investigation of those complaints when Investigator Graham contacted her and asked her to accompany him to meet with the Defendant on November 5, 2009. The testimony of these two witnesses reveal that they did not single the Defendant out for investigation for any race-based reason but, instead, were investigating complaints and concerns raised by others. Moreover, this Court has previously found [Doc. 107] that Investigators Graham and Houser did not make any racist remarks to the Defendant when they met with her on November 5 and 25, 2009. Accordingly, the Defendant has failed to show a discriminatory intent.

The Defendant has also failed to demonstrate that similarly situated persons were not also prosecuted. Although no other medical professional from Maryville Pain Management has been

charged in this case, the Court finds that the other medical professionals[7] are not "similarly situated" to the Defendant. At the September 26 suppression hearing, both Investigator Graham and Investigator Houser testified that during the November 5, 2009 meeting with the Defendant, the Defendant admitted to pre-signing 250 blank prescriptions and leaving them with Codefendant Tamral Guzman to be used when the Defendant was not at the clinic. The Government argues that it has no evidence that any of the other medical professionals working at Maryville Pain Management pre-signed prescriptions for use in their absence by persons lacking the authority to prescribe controlled substances. Accordingly, the Court finds that the Defendant has also failed to demonstrate a discriminatory effect from the instant charges. The Court recommends that the Defendant's Motion to Dismiss for Selective Prosecution [Doc. 73] be denied.

---

[7]The Court assumes for the sake of argument that none of the six other medical professionals employed at Maryville Pain Management are African or African American.

## IV. CONCLUSION

After carefully considering the motions, memoranda, testimony, and arguments in this case and after reviewing the relevant legal authorities, the Court finds no basis to dismiss the Third Superseding Indictment. For the reasons set forth herein, it is **RECOMMENDED** that Defendant Wright's Amended Motion to Dismiss for Duplicity and to Strike Surplussage [sic.] in Second Superseding Indictment [**Doc. 69**], Defendant Wright's Motion to Dismiss for Preindictment Delay and Failure to Preserve Evidence in Violation of Defendant's Due Process Rights [**Doc. 71**], and Defendant Wright's Motion to Dismiss for Selective Prosecution [**Doc. 73**] be **DENIED**.[8]

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[8]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see  United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).